Argued and submitted October 29, 1979,
affirmed as modified and remanded March 17, 1980

LAWRENCE, et al,
*Respondents,*
*v.*
PEEL, et ux,
*Appellants.*

(No. 77-2774, CA 12896)

607 P2d 1386

Harold D. Gillis, P.C., Eugene, argued the cause and filed the briefs for appellants.

K. Patrick Neill, Eugene, argued the cause for respondent. With him on the brief was Hershner, Hunter, Miller, Moulton & Andrews, Eugene.

Before Schwab, Chief Judge, and Buttler and Roberts, Judges.

BUTTLER, J.

## BUTTLER, J.

Defendants appeal an adverse decree entered in this Declaratory Judgment proceeding. The issues presented involve a dispute over the existence and extent of an easement retained by plaintiffs[1] when they sold a portion of their land to defendants, and over the existence and extent of a right of first refusal in defendants with respect to adjoining property retained by plaintiffs. Defendants also contend that the trial court erred in allowing attorney's fees to plaintiffs under a contract provision allowing such fees to the "prevailing party" in any dispute involving the contract. The proceeding was tried as a suit in equity; we review *de novo* and modify and remand.

By way of background, plaintiffs and defendants entered into an earnest money agreement in which plaintiffs agreed to sell and defendants to buy certain real property in Lane County. That property was improved with a residence to which a gravel driveway led from a public road. Plaintiffs retained other property adjacent to that sold and to the driveway. Both parties negotiated through the same realtor, and after the price was agreed upon, defendants signed an earnest money agreement which the realtor presented to plaintiffs. That agreement did not reserve an easement over the existing driveway, and when plaintiffs asked the realtor to provide for the easement, the realtor suggested that plaintiffs grant defendants a right of first refusal as to the remaining property as an incentive to defendants to agree to the easement. Plaintiffs agreed and the final version of the agreement contained the following language which forms the genesis of this dispute:

"* * * Seller to retain access easement over existing driveway to a point 1057 feet from the county

---

[1] Plaintiffs Samuel G. and Teresa J. Wilson are nominal plaintiffs only, having signed an earnest money agreement to purchase the parcel plaintiffs wish to sell. They took no part in the proceedings below or on appeal. All references to plaintiffs in this opinion refer only to Robert G. and Carolyn J. Lawrence.

road. Seller to grant buyer right of first refusal before sale of his adjoining land."

Because the parties dealt through the realtors, they had no direct negotiation or discussions between themselves, and the terms of the easement and right of first refusal were not questioned by defendants before the agreement was signed.

The transaction was closed in escrow; at the closing plaintiffs executed a deed to the property and both parties signed a separate document captioned "EASEMENT." The easement document was prepared by plaintiffs' attorney, but was, apparently, only a rough draft which was not intended to serve as the final form of the instrument. It did, however, find its way to the closing and, although none of the parties had seen it before and did not read it at the closing, they signed it.

The easement signed by the parties covered a corridor 60 feet by 1570 feet through which the driveway runs. The driveway itself is 16 to 20 feet in width. The easement contained terms relating to access for utilities and road maintenance which had never been discussed by either party, but which apparently were included in an existing easement over a portion of the same corridor of land, which prior easement was specifically referred to in the document involved here.

There was no separate document setting forth the terms of the right of first refusal and no reference to such a right was referred to in any of the closing documents. The only reference thereto was in the earnest money agreement.

This dispute arose when plaintiffs subdivided their remaining land and proposed to sell one of the parcels. When defendants were notified of the impending sale and offered the first right of refusal, they responded through their attorney that plaintiffs or their successors had no right to use the existing driveway for access to the property retained by plaintiffs, including the parcel being offered. Subsequently, through different attorneys, defendants contended that their right of

first refusal did not permit plaintiffs to sell their retained land piecemeal, but required that defendants be given the opportunity to buy it in one piece.

This lawsuit followed to determine the rights of the parties. Defendants claim they are not bound by the terms of the easement document they signed at the closing because it was not what they had previously agreed to in the earnest money agreement; they ask that it be rescinded. They claim their right of first refusal is as stated above. Plaintiffs, in turn, contend that the easement should be enforced as written and that defendants had no right of first refusal, or if they did, it did not require plaintiffs to sell their adjoining land in one piece.

The trial court concluded that the signed easement was enforceable, but reformed it to extend only 1057 feet from the county road. Defendants were declared to have a right of first refusal as to plaintiffs' adjoining property, but that right was found not to require that plaintiffs sell their retained land in one piece. Defendants were declared to have a right to purchase any piece of the retained property plaintiffs propose to sell on the same terms as plaintiffs proposed to sell it, and that they had 20 days within which to exercise that right after notice.

On appeal defendants contend the trial court erred in declaring the easement enforceable, and in reforming it, and also erred in determining the right of first refusal did not require plaintiffs to sell their retained property in one parcel. Over all, what defendants ask this court to do is to give them everything that they deem beneficial to them and rescind the balance. That does not have an appealing ring in equity.

The record is clear that plaintiffs insisted upon the reservation of an easement for the benefit of their remaining property and that defendants agreed to that reservation. They argue, however, that they should not be bound by the terms of the easement instrument because they did not read it before they signed it and

were not aware of its terms. They seek to rescind the instrument. There are several difficulties with defendants' position. It is clear that the easement was not the product of an independent bargain. Rather, it was a part of the larger transaction involving the sale of a part of plaintiffs' land, reserving an easement for the benefit of the land unsold, and the granting of a right of first refusal. Defendants here do not seek to rescind the entire transaction, but only the easement portion of it. They may not do so. *See Pickinpaugh v. Morton,* 268 Or 9, 519 P2d 91 (1974); *Mascall v. Erikson,* 131 Or 509, 283 P 2 (1929).

Nor may defendants rescind the easement on the basis of their failure to read the document before signing it. *See Knappenberger v. Cascade Ins. Co.,* 259 Or 392, 487 P2d 80 (1971); *Franklin v. Western Pac. Ins. Co.,* 243 Or 448, 414 P2d 343 (1966).[2] Defendants have shown no misrepresentations, innocent or otherwise, by plaintiffs or their agents. They are not entitled to rescission of the easement instrument.

Defendants validly point out that the easement instrument has some flaws. On its face, it purports to be a document independent of any other. Yet it refers to the parties as "grantors" and "grantees" without naming them. Further, it recites that the easement "reserved" (from what it does not say) is for the benefit of property described in Exhibit B attached thereto, which exhibit does not describe plaintiffs' retained property; it describes the property conveyed to defendants. There are no signature lines; the parties signed the instrument immediately above the jurat relating to the acknowledgments, which included their respective names. Further, the easement described in Ex-

---

[2] Defendants testified that they signed only a single signature page and were not presented with the easement instrument at all. There was, however, contradictory testimony and the trial court apparently accepted that testimony as being the more credible. On *de novo* review, we tend to defer to the trial court's evaluation of testimony and the credibility of witnesses, *Larson v. Trachsel,* 282 Or 247, 577 P2d 928 (1978); *Held v. Held,* 8 Or App 280, 493 P2d 1388 (1972), and see no reason here which justifies our reaching an opposite conclusion.

hibit A to the document is 1570 feet in length rather than 1057 feet as set forth in the earnest money agreement. All of these flaws lead to the conclusion that there was a mutual mistake justifying reformation to accord with the intention of the parties.

Defendants contend, however, that the trial court was without authority to reform the easement document because neither party sought reformation. The prayer of the complaint sought general equitable relief.

> "It is a general rule of equity that under a prayer for general relief, as here, the chancellor may shape his decree according to the equities of the case and will grant any relief warranted by the allegation of the bill and the evidence in the case. * * *" *Brooke v. Amuchastegui,* 226 Or 335, 341, 360 P2d 275 (1961).

And *see George v. Coombes,* 278 Or 3, 9, 562 P2d 200 (1977); *Stan Wiley v. Berg,* 282 Or 9, 21, 578 P2d 384 (1978).[3]

The trial court reformed only the opening paragraph to make it read as follows:

> "Reserving unto the grantors, their personal representatives, heirs, successors in interest or title and assigns, a nonexclusive and perpetual access easement over and across the real property described on Exhibit 'A' attached hereto and by this reference incorporated herein, to a point 1057' more or less from the point where said real property adjoins Hill Road, for the purpose of use of the driveway existing thereon as of March 26, 1974. The following terms and provisions shall apply to the easement herein reserved:"

It did not go far enough. For the sake of clarifying the chain of title to the properties involved in this dispute and avoiding future litigation, Exhibit B to the document should be reformed to describe the property

---

[3] We note also that the reformation ordered by the trial court was to the defendants' benefit because it restricted plaintiffs' use to the driveway existing at the time of the sale and shortened the easement from 1570 feet to 1057 feet.

[239]

benefitted by the easement. Although there is a survey in the record, it may not be adequate to prepare that description, and we must remand these proceedings to the trial court to prepare it and to take further evidence if that is necessary for that purpose. Further, it is apparent that the easement document signed by the parties was not intended to stand by itself;[4] rather, it

[4] The signed "EASEMENT" in its entirety, provided:

"EASEMENT

"Reserving unto the grantors, their personal representatives, heirs, successors in interest or title and assigns, a nonexclusive and perpetual easement over and across the real property described on Exhibit A attached hereto and by this reference incorporated herein. The following terms and provisions shall apply to the easement herein reserved.

"1.  This easement is for right of way purposes and ingress and egress to the retained real property of the grantors described on Exhibit B attached hereto and by this reference incorporated herein and is appurtenant thereto. This easement is for residential and agricultural uses only and may not be used for commercial or industrial purposes except as the same may be incidental to said residential and agricultural uses.

"2.  This easement may also be utilized for the placement and maintenance of utility services to the benefited properties.

"3.  This easement may be surcharged through the division or subdivision of any of the benefited properties.

"4.  By warranty deed recorded November 15, 1972, Lane County Oregon Official Records as Instrument 28420, the grantors herein granted to Wayne H. Wetzell and Bonnie J. Wetzell, husband and wife, an easement over and across a portion of the property which is the subject of the easement reserved herein. By affixing their signatures hereto, the grantees, their personal representatives, heirs, successors in interest or title and assigns, agree to be bound to the terms and provisions of said easement as the same are applicable to said grantees.

"5.  A roadway now exists over and across the easement herein reserved. The parties hereto and any other party benefited by the easement herein reserved will bear a proportionate share of the costs and expense of maintaining the roadway running over and across said easement. This obligation shall apply only to that portion of said roadway utilized by the particular party for access to that party's property. The proportionate share of such costs and expense shall be determined by a fraction, the numerator of which is 1, and the denominator of which is a number equal to the number of owners utilizing that portion of the roadway for access to their property. The standard of maintenance shall be that as set forth in the easement

[240]

should have been added to the deed immediately following the property description. Unless this is done, as things now stand the deed conveys more than the parties intended and it is at least problematical whether the easement would appear in the chain of title even though it was recorded immediately following, but not as a part of, the deed.

Accordingly, to do complete equity, the deed should be reformed to include the easement the parties intended to be reserved so that the deed does not convey more than the parties intended. *See* Walsh, Equity 516, § 111 (1930). When that is done, the fact that the easement document as signed does not describe the dominant estate benefitted thereby does not cause the easement to fail because a single instrument of conveyance may create an estate in land in one person and an easement in another. *Garza v. Grayson,* 255 Or 413, 467 P2d 960 (1970).

To summarize, we modify the decree to reform the deed by adding to it immediately following the description of the real property conveyed the language of the

granted by warranty deed recorded November 15, 1972, and described above.

"6. It is the responsibility of the owner of each property which is benefited by the easement herein reserved to maintain their respective properties in a manner that will not permit the obstruction or interference with the use of the easement for the purposes herein set forth. In this regard, each such owner will fence or otherwise maintain their property so as to prevent the interference with the use of said easement by livestock kept by said owner.

"7. All of the rights and obligations herein set forth constitute covenants running with the land.

"8. Any party hereto, their personal representatives, heirs, successors in interest or title or assigns, may enforce the terms and provisions herein set forth by injunction or suit for specific performance in equity in addition to any other remedy available at law or in equity.

"9. In case suit or action is instituted by any party for the purpose of obtaining or enforcing any of the rights and obligations herein set forth, the prevailing party therein shall be entitled to an attorney's fee in such amount as the court may determine reasonable in both the trial and any appellate court."

reserved easement as reformed by the trial court and as further reformed by this court to make Exhibit B thereto describe the property retained by plaintiffs to be benefited by the reserved easement.

Defendants also contend that the trial court's interpretation of the right of first refusal was error. As noted above, the earnest money agreement stated only "Seller to grant buyer right of first refusal before sale of the adjoining land." Although there is no mention of the right of first refusal in any other document involved in the transaction, plaintiffs do not contend there was a merger by deed. *See Cox v. Bowman et ux,* 213 Or 154, 323 P2d 60 (1958). In fact, they recognized the right by offering to defendant the parcel they proposed to sell pursuant to that right as the plaintiffs understood it.

Defendants, however, seek to have the right interpreted to require that plaintiffs offer all of their retained property at one time rather than only a part, giving defendants the first opportunity to buy. There is no basis for that contention. Nothing in the language or in the negotiations suggests that the parties so intended. Defendants have cited no authority for the proposition that as a general rule a right of first refusal requires that the land be sold in one piece. In fact, *Sargent v. Halsey,* 75 Misc 2d 624, 348 NYS2d 661, *aff'd* 42 App Div 2d 375, 348 NYS2d 160 (1973), cited by defendants, supports the contrary conclusion. The trial court accepted plaintiffs' interpretation of the right, but extended the time within which defendants could accept the offer to 20 days. Plaintiffs have not cross-appealed, and we see no reason to disturb that portion of the decree.

The final issue raised is the question of who is the "prevailing party" entitled to attorney fees pursuant to the following provision of the easement document:

"In case suit or action is instituted by any party for the purpose of obtaining or enforcing any of the rights and obligations herein set forth, the prevailing

party therein shall be entitled to an attorney's fee in such amount as the court may determine reasonable in both the trial and any appellate court."

Defendants' contention is that the term "prevailing party" is ambiguous and as such should be interpreted against plaintiffs, whose attorney prepared it. Although it is not always easy to determine who is the prevailing party in a dispute, and there may be instances where there is a standoff, the term is not ambiguous.

We have held that there can be only one prevailing party for purposes of an award of attorney fees, but that there need not always be a winner. *Marquam Investment Corp. v. Myers,* 35 Or App 23, 581 P2d 545, *rev den* 284 Or 341 (1978). Although *Marquam* involved a statute giving the court discretion in awarding attorney's fees to the prevailing party, and the contract provision here provides that the court *shall* award such fees to the prevailing party, it does not follow that fees must be awarded. If both parties prevailed, or neither of them prevailed,[5] an award of attorney's fees would not be appropriate or required.

In weighing what was sought by each party against the result obtained, we agree with the trial court that plaintiffs were the prevailing party in this proceeding and the award of attorney's fees is affirmed.

Affirmed as modified, and remanded for further proceedings consistent with this opinion.

---

[5] We cannot say here, as did the Dodo in *Alice in Wonderland* after conducting a "Caucus-race": *"Everybody* has won, and all must have prizes." *The Lewis Carroll Book* (The Dial Press, 1931), p 23.